704 N.W.2d 237 (2005)
270 Neb. 494
In re APPLICATION OF METROPOLITAN UTILITIES DISTRICT OF OMAHA.
Metropolitan Utilities District of Omaha, a political subdivision and a municipal corporation, appellee and cross-appellant,
v.
Nebraska Public Service Commission, appellant and cross-appellee,
Cornerstone Energy, Inc., a Nebraska corporation, and Aquila, Inc., a Delaware corporation doing business as Aquila Networks, appellees and cross-appellants, and
NorthWestern Energy, a division of NorthWestern Corporation, a Delaware corporation, appellee.
No. S-04-662.
Supreme Court of Nebraska.
October 7, 2005.
*239 Jon Bruning, Attorney General, and L. Jay Bartel, Lincoln, for appellant.
John M. Lingelbach, Max J. Burbach, and Stacia L. Palser, of Koley Jessen, P.C., Omaha, for appellee Cornerstone Energy, Inc.
Douglas J. Law and L. Steven Grasz, of Blackwell, Sanders, Peper & Martin, L.L.P., Omaha, for appellee Aquila, Inc.
Susan E. Prazan, Omaha, for appellee Metropolitan Utilities District of Omaha.
HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.
The Nebraska Public Service Commission (Commission) dismissed the application of the Metropolitan Utilities District of Omaha (MUD) for certification as a competitive natural gas provider (CNGP). *240 The district court "affirmed," finding that the Commission lacked jurisdiction. The Commission appeals, contending that it has jurisdiction over MUD under Neb.Rev.Stat. §§ 66-1848 and 66-1849 (Reissue 2003). MUD argues, however, that the Commission lacks jurisdiction because of Neb.Rev.Stat. § 57-1306 (Reissue 2004). We determine that the newer and more specific statutes, §§ 66-1848 and 66-1849, apply and give the Commission jurisdiction over MUD's application. Accordingly, we reverse, and remand for further proceedings.

BACKGROUND
MUD is a political subdivision and a municipal corporation. In 2003, it filed an application with the Commission seeking to be certified as a CNGP outside of its service area under §§ 66-1848 and 66-1849. In the application, MUD stated that it wanted to distribute natural gas to customers located on nonowned distribution facilities. Cornerstone Energy, Inc.; Aquila, Inc.; and NorthWestern Corporation intervened, protesting the application and moving for dismissal. The Commission denied MUD's application.
MUD sought review in the district court under Neb.Rev.Stat. § 84-917 (Reissue 1999) of the Administrative Procedure Act. The district court "affirmed because the Commission lacked jurisdiction." Thus, the court did not reach the merits of the application and should have dismissed the action instead of affirming it because its decision was based on a lack of jurisdiction. The Commission argues that the court erred when it "affirmed" the dismissal for lack of jurisdiction, but asks that we affirm its denial of MUD's application. Cornerstone Energy and Aquila cross-appeal. They also argue that the Commission has jurisdiction and request that we affirm.

ASSIGNMENTS OF ERROR
The Commission assigns that the district court erred by (1) finding that it lacked jurisdiction over the application and (2) failing to determine that the Commission properly denied the application.

STANDARD OF REVIEW
A jurisdictional question which does not involve a factual dispute is a matter of law. Douglas Cty. Sch. Dist. 0001 v. Johanns, 269 Neb. 664, 694 N.W.2d 668 (2005).
Standing is a jurisdictional component of a party's case because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach an independent conclusion. Waste Connections of Neb. v. City of Lincoln, 269 Neb. 855, 697 N.W.2d 256 (2005).
To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. In re Estate of Bauer, 270 Neb. 91, 700 N.W.2d 572 (2005).

ANALYSIS
MUD raises two procedural issues: The Commission lacks standing to appeal, and the Commission is not a proper party to the action.

STANDING
MUD argues that the Commission is not an aggrieved party and therefore lacks standing to appeal. It argues that the Commission was the prevailing party because the court "affirmed" the denial of the application. As a result, MUD contends that the court's order did not adversely *241 affect the Commission. The Commission, however, argues that it has an interest because the court's order affects its authority to regulate CNGP's.
Neb.Rev.Stat. § 84-918(1) (Reissue 1999) provides that "[a]n aggrieved party may secure a review of any judgment rendered or final order made by the district court under the Administrative Procedure Act by appeal to the Court of Appeals." The act does not define the term "aggrieved party." We have, however, addressed the "aggrieved party" in terms of standing. See Stoneman v. United Neb. Bank, 254 Neb. 477, 577 N.W.2d 271 (1998).
A party has standing to invoke a court's jurisdiction if it has a legal or equitable right, title, or interest in the subject matter of the controversy. See Adam v. City of Hastings, 267 Neb. 641, 676 N.W.2d 710 (2004). A party must have standing before a court can exercise jurisdiction, and either a party or the court can raise a question of standing at any time during the proceeding. See Stevens v. Downing, Alexander, 269 Neb. 347, 693 N.W.2d 532 (2005). The "party aggrieved" concept must be given a practical rather than hypertechnical meaning. See Custer v. Sweeney, 89 F.3d 1156 (4th Cir.1996).
Here, although the court "affirmed" the Commission's order denying the application, the Commission still has a legal interest in the controversy. The district court's determination that the Commission lacked jurisdiction effectively halted its authority to regulate certain activities. As the regulatory agency over CNGP's, it has a direct interest in challenging a finding that it lacks jurisdiction over metropolitan utilities districts. Therefore, we determine that the court's order affects the Commission's ability to regulate CNGP's and that it has standing to appeal.

COMMISSION AS PROPER PARTY TO ACTION
MUD next argues that because the Commission is a neutral factfinding body, it cannot appeal under § 84-917(2)(a). Section 84-917(2)(a) provides in part:
Proceedings for review shall be instituted by filing a petition in the district court of the county where the action is taken within thirty days after the service of the final decision by the agency. All parties of record shall be made parties to the proceedings for review. If an agency's only role in a contested case is to act as a neutral factfinding body, the agency shall not be a party of record. In all other cases, the agency shall be a party of record.
An administrative agency is a neutral factfinding body when it is neither an adversary nor an advocate of a party. See Zalkins Peerless Co. v. Nebraska Equal Opp. Comm., 217 Neb. 289, 348 N.W.2d 846 (1984). But when an administrative agency acts as the primary civil enforcement agency, it is more than a neutral fact finderit is a required party. See Becker v. Nebraska Acct. & Disclosure Comm., 249 Neb. 28, 541 N.W.2d 36 (1995).
Neb.Rev.Stat. § 66-1804(1) (Reissue 2003) sets out the Commission's powers concerning natural gas utilities:
The commission shall have full power, authority, and jurisdiction to regulate natural gas public utilities and may do all things necessary and convenient for the exercise of such power, authority, and jurisdiction. Except as provided in the Nebraska Natural Gas Pipeline Safety Act of 1969, and notwithstanding any other provision of law, such power, authority, and jurisdiction shall extend to, but not be limited to, all matters encompassed within the State Natural Gas Regulation Act and sections 57-1301 to 57-1307.
*242 Under the statutory authority given to the Commission, it acts as more than a neutral factfinding body. The Commission has the authority to set conditions on certifications, resolve disputes, investigate complaints, issue orders, and enforce orders. Neb.Rev.Stat. §§ 68-1811 (Reissue 2003) and 66-1849. We determine that the Commission is a required party in the action and could appeal the court's order.

JURISDICTION
The Commission argues that it had jurisdiction over MUD's application under the plain language of §§ 66-1848 and 66-1849, both enacted in 2003. MUD, however, argues that a previously enacted statute, § 57-1306, applies and deprives the Commission of jurisdiction.
Section 66-1849 provides: "(1) The commission shall certify all competitive natural gas providers and aggregators providing natural gas services.... (2) The commission may resolve disputes involving the provision of natural gas services by a competitive natural gas provider or aggregator." Section 66-1848 defines a CNGP as follows:
For purposes of this section and section 66-1849:
....
(2)(a) Competitive natural gas provider means a person who takes title to natural gas and sells it for consumption by a retail end user. Competitive natural gas provider includes an affiliate of a natural gas public utility.
(b) Competitive natural gas provider does not include the following:
(i) A jurisdictional utility;
(ii) A city-owned or operated natural gas utility or metropolitan utilities district in areas in which it provides natural gas service through pipes it owns; or
(iii) A natural gas public utility that is not subject to the act as provided in section 66-1803 in areas in which it is providing natural gas service in accordance with section 66-1803.
In addition, § 66-1804(2) provides: "The State Natural Gas Regulation Act and all grants of power, authority, and jurisdiction in the act made to the commission shall be liberally construed, and all incidental powers necessary to carry into effect the provisions of the act are expressly granted to and conferred upon the commission."
MUD, however, argues that § 57-1306 controls. It provides in pertinent part:
If the investor-owned natural gas utility or the metropolitan utilities district disagrees with a determination by an investor-owned natural gas utility or a metropolitan utilities district that a proposed extension or enlargement is in the public interest, the matter may be submitted to the Public Service Commission for hearing.... The commission shall have no jurisdiction over a metropolitan utilities district or natural gas utility beyond the determination of disputes brought before it under sections 57-1301 to 57-1307.

(Emphasis supplied.)
Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme, so that effect is given to every provision. See Soto v. State, 269 Neb. 337, 693 N.W.2d 491 (2005). To the extent that a conflict exists between two statutes on the same subject, the specific statute controls over the general statute. Id.
MUD is correct that § 57-1306 states that the Commission does not have jurisdiction over a metropolitan utilities district except for disputes brought under §§ 57-1301 to 57-1307. But the statutes specifically pertaining to CNGP's were passed later and provide the Commission with jurisdiction over all CNGP's. In particular, *243 § 66-1848 defines a CNGP as a person who sells gas for consumption by a retail end user. It then excludes metropolitan utilities districts only in areas in which it provides natural gas service through pipes it ownswhich is not the case here. This more specific provision of § 66-1848 trumps the general provisions of § 57-1306, particularly when considering the stated legislative desire that the Commission's powers "shall be liberally construed." See § 66-1804(2).
In its application, MUD stated it intended to sell natural gas to distribution facilities not owned by MUD. Thus, MUD falls under the certification provisions and the Commission's jurisdiction. Therefore, the Commission had jurisdiction over MUD's application for certification and the district court erred when it affirmed because of a lack of jurisdiction.

REMAND
The Commission next asks that we affirm its decision denying MUD's application. The district court, however, did not address the application's merits.
An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. Hauser v. Nebraska Police Stds. Adv. Council, 269 Neb. 541, 694 N.W.2d 171 (2005). Accordingly, we do not address whether MUD has authority to act as a CNGP and remand the cause to the district court for that determination.

CONCLUSION
We determine that the Commission had jurisdiction over MUD's application. We do not address the application's merits. Therefore, we reverse, and remand for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.