she testified that she would have sought veterinary care if D.J. became sick. Van Kleek alone exercised control over D.J.'s position relative to the outside world. That she did not breach a duty of care by, for example, carelessly leaving the gate open or bringing D.J. into "the public domain where third parties reside,"[35] does not mean that she owed no duty.

## CONCLUSION

Van Kleek was an insured under the policy because she was "legally responsible" for the Chapmans' dog. As an insured, the unambiguous terms of the policy exclude coverage of her injury. Accordingly, Farmers is entitled to summary judgment.

AFFIRMED.

---

[35] Brief for appellant at 17.

---

DELORES SHAFFER, AS GUARDIAN AND NEXT FRIEND OF
BRIAN SHAFFER, AN INCAPACITATED PERSON, APPELLEE, v.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN
SERVICES AND VIVIANNE M. CHAUMONT, DIRECTOR,
DIVISION OF MEDICAID AND LONG-TERM CARE,
APPELLEES, AND COVENTRY HEALTH CARE
OF NEBRASKA, INC., APPELLANT.
___ N.W.2d ___

Filed December 19, 2014.    No. S-14-165.

1. **Administrative Law: Final Orders: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. **Administrative Law: Judgments: Appeal and Error.** When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.

3. **Judgments: Appeal and Error.** Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.

4.  **Administrative Law: Statutes: Appeal and Error.** The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

5.  **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower court.

6.  **Actions: Parties: Standing.** To have standing, a litigant must have a legal or equitable right, title, or interest in the subject matter of the controversy.

7.  **Parties: Judgments: Appeal and Error.** An appeal is generally available only to persons who were parties to the case below, although in a proper case a nonparty may be sufficiently interested in a judgment to permit him or her to take an appeal from it.

8.  **Parties: Jurisdiction: Waiver.** The presence of necessary parties to a suit is a jurisdictional matter that cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest that would be affected by the judgment.

9.  **Administrative Law: Words and Phrases.** An administrative agency is a neutral factfinding body when it is neither an adversary nor an advocate of a party.

10. **Administrative Law: Parties.** When an administrative agency acts as the primary civil enforcement agency, it is more than a neutral factfinding body.

11. ____: ____. An administrative agency that is charged with the responsibility of protecting the public interest, as distinguished from determining the rights of two or more individuals in a dispute before such agency, is more than a neutral factfinding body.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Vacated and dismissed.

Thomas J. Kenny, Kathryn E. Jones, and Edward M. Fox II, of Kutak Rock, L.L.P., for appellant.

Alan E. Peterson and Thomas J. O'Neill for appellee Delores Shaffer.

On brief, Douglas J. Peterson, of Keating, O'Gara, Nedved & Peter, L.L.O., for appellee Delores Shaffer.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, and Cassel, JJ.

Stephan, J.

This is an appeal from an order of the district court for Lancaster County which reversed a determination by the

Nebraska Department of Health and Human Services (the Department) that Brian Shaffer was ineligible for certain Medicaid benefits. The appellant, Coventry Health Care of Nebraska, Inc. (Coventry), participated in the administrative proceedings and advocated the determination eventually reached by the Department, but it was not named as a party in the appeal to the district court. Coventry contends that it was a necessary party to the district court appeal and that because it was not joined, the district court was without jurisdiction to reverse the Department's determination in its favor. We conclude that Coventry has standing to appeal and was a necessary party in the appeal to the district court.

## I. BACKGROUND

Shaffer is a 33-year-old man with severe autism and chemical sensitivities. He has many environmental, food, and drug allergies. He resides with his mother, Delores Shaffer, who is a licensed practical nurse.

Coventry is a managed care organization (MCO) which contracts with the Department to provide Medicaid services.[1] Coventry receives a capitation payment, which is a fee "paid by Medicaid to an MCO on a monthly basis for each client enrolled with the physical health or behavioral health plan. The fee covers all services required to be provided by the MCO to the client, regardless of whether the client receives services or not."[2] This type of care program is different from a fee-for-service program in that Coventry receives from the Department a set rate for each person enrolled in its program.[3] Coventry then provides the requested services.[4]

Until October 2011, Delores was paid to provide 18 hours a day of private duty nursing (PDN) care to Shaffer. This payment came from a Medicaid provider other than Coventry. In October 2011, Shaffer's Medicaid coverage was then transferred to Coventry. In April 2012, Delores asked Coventry

---

[1] See 471 Neb. Admin. Code App. 471-000-122 (2010).

[2] 482 Neb. Admin. Code, ch. 1, § 002 (2013).

[3] *Id*.

[4] 482 Neb. Admin. Code, ch. 4, § 001 (2012).

to approve her to continue to provide PDN to Shaffer for 18 hours each day. Coventry denied this request after determining the nursing services were not medically necessary. Shaffer filed a first-level appeal with Coventry, which was denied. Shaffer then filed a second-level appeal with Coventry, which was also denied. Shaffer then requested a State fair hearing with the Department pursuant to 482 Neb. Admin. Code, ch. 7, § 003 (2010).

The fair hearing was held on January 22, 2013, before a hearing officer. Shaffer was represented by legal counsel. Teresa Engel, Coventry's supervisor of the appeals department, appeared for Coventry. At the commencement of the hearing, the hearing officer asked the "parties" to enter into a stipulation regarding the redaction of certain information from the exhibits which were to be offered. Engel and Shaffer's counsel agreed to the stipulation, which was made a part of the record. Engel also acknowledged that Coventry had received copies of all exhibits "from the State."

The hearing officer noted it was customary to "have the Department or its representative or contractor in this case, Coventry, put on [its] testimonial evidence first." Shaffer's counsel indicated he had no objection to this procedure, and both Engel and Shaffer's counsel declined the hearing officer's invitation to make opening statements. Engel was then sworn as Coventry's first witness. Engel presented narrative testimony explaining Coventry's reasons for denying the requested Medicaid benefits and describing the first- and second-level appeal determinations made by Coventry. She was cross-examined by Shaffer's counsel, after which she stated Coventry was resting its case but "may . . . pose additional questions at the end."

Shaffer's counsel then called both Delores and Shaffer's allergist. Both testified that in their opinion, continuation of the PDN care which Delores had been providing to Shaffer was medically necessary. The hearing officer permitted both Engel and Dr. Debra Esser, Coventry's vice president of medical affairs, to cross-examine both witnesses. On behalf of Coventry, Engel made a relevancy objection during Delores' direct examination, which the hearing officer overruled.

After Delores and Shaffer's allergist concluded their testimony, Esser was sworn and testified on behalf of Coventry, apparently as a rebuttal witness. Esser, a board-certified family practice physician, stated in response to questions posed by Engel that the PDN services for Shaffer were not medically necessary. She was cross-examined by Shaffer's counsel.

The hearing officer asked both Engel and Shaffer's counsel if they wished to offer any additional evidence, and when they responded in the negative, the hearing officer announced, "[b]oth parties have rested." Shaffer's counsel made a closing statement, to which Engel responded.

On April 9, 2013, Vivianne M. Chaumont, who was then the director of the Division of Medicaid & Long-Term Care of the Department, entered an order based upon the record made at the State fair hearing. The order noted that Engel and Esser had appeared at the fair hearing on behalf of Coventry, that "[t]he parties" had entered into a stipulation regarding exhibits, and that "[a]ll parties were provided proper notice of the administrative hearing." After discussing the evidence adduced at the fair hearing, the order concluded the PDN services at issue were not medically necessary.

Delores, as Shaffer's guardian and next friend, filed a petition in the district court for Lancaster County seeking judicial review of this order pursuant to the Administrative Procedure Act (APA).[5] The petition named the Department and Chaumont in her official capacity as respondents, but did not name Coventry. The district court conducted a de novo review of the administrative record and reversed the order of the Department, finding the PDN services which Delores provided to Shaffer were medically necessary, because there was a significant probability that Shaffer could develop medical complications "virtually immediately" without such services.

The Department did not appeal, but Coventry did. We moved the appeal to our docket on our own motion pursuant to our

---

[5] See Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2014).

statutory authority to regulate the caseloads of the appellate courts of this state.[6]

## II. ASSIGNMENTS OF ERROR

Coventry assigns, consolidated and restated, that the district court erred in (1) failing to find Coventry was a necessary party to the district court appeal; (2) failing to join Coventry as a necessary party, because the Department was statutorily precluded from being a party; and (3) finding the PDN services were medically necessary.

## III. STANDARD OF REVIEW

[1-3] A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[7] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.[8] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[9]

[4] The meaning and interpretation of statutes and regulations are questions of law for which an appellate court as an obligation to reach an independent conclusion irrespective of the decision made by the court below.[10]

[5] When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which

[6] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[7] *Holmes v. State*, 275 Neb. 211, 745 N.W.2d 578 (2008); *Stejskal v. Department of Admin. Servs.*, 266 Neb. 346, 665 N.W.2d 576 (2003).

[8] *Id*.

[9] *Id*.

[10] *Betterman v. Department of Motor Vehicles*, 273 Neb. 178, 728 N.W.2d 570 (2007).

requires an appellate court to reach a conclusion independent of the decisions made by the lower court.[11]

## IV. ANALYSIS

### 1. COVENTRY'S STANDING
#### TO APPEAL

[6] A threshold issue in this case is whether Coventry has standing to bring this appeal from the order of the district court, despite the fact that it did not participate in the district court proceedings. The APA provides that an "aggrieved party" may seek appellate review of a district court's order or judgment in an appeal from an administrative agency.[12] Because the phrase "aggrieved party" is not defined by the APA, we have addressed the issue as a matter of standing.[13] To have standing, a litigant must have a legal or equitable right, title, or interest in the subject matter of the controversy.[14] The "party aggrieved" concept must be given a practical rather than hypertechnical meaning.[15]

[7] An appeal is generally available only to persons who were parties to the case below, although in a proper case a nonparty may be sufficiently interested in a judgment to permit him or her to take an appeal from it.[16] Here, Coventry successfully contested Shaffer's claim at the fair hearing. Coventry contends it has a financial interest in the outcome of this litigation and that as an MCO, it was a necessary party to the APA appeal under federal Medicaid regulations.[17] The district court's order acknowledges that "[Shaffer's] coverage with [Coventry] became effective on October 1, 2011,"

---

[11] *Id.*

[12] § 84-918(1).

[13] See, *In re Application of Metropolitan Util. Dist.*, 270 Neb. 494, 704 N.W.2d 237 (2005); *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998).

[14] See *In re Application of Metropolitan Util. Dist., supra* note 13.

[15] *Id.*

[16] *Rozmus v. Rozmus*, 257 Neb. 142, 595 N.W.2d 893 (1999).

[17] See 42 C.F.R. § 438.408(f)(2) (2013).

and it utilized the definition of "medical necessity" set out in Coventry's "Handbook of Covered Services" in reaching its determination. We are satisfied that Coventry has alleged a sufficient legal right and interest in the matter in controversy to confer standing to appeal from the final order of the district court.

## 2. Necessary Parties

[8] Generally, the presence of necessary parties to a suit is a jurisdictional matter that cannot be waived by the parties; it is the duty of the plaintiff to join all persons who have or claim any interest that would be affected by the judgment.[18] Here, Shaffer's petition for review filed in the district court named only the Department and the Medicaid director as respondents. Coventry contends there was a defect of parties before the district court for two reasons: (1) the Department was not a proper party to the appeal and (2) Coventry was a necessary party that was not joined.

Our resolution of both contentions begins with the provision of the APA which requires that in proceedings for judicial review of a final decision by an administrative agency in a contested case,

[a]ll parties of record shall be made parties to the proceedings for review. If an agency's only role in a contested case is to act as a neutral factfinding body, the agency shall not be a party of record. In all other cases, the agency shall be a party of record.[19]

### (a) The Department

[9-11] Coventry contends that the Department was not a proper party to the district court appeal because it served only as a "neutral factfinding body" in the contested case. Recently, in *McDougle v. State ex rel. Bruning*,[20] we summarized the principles which guide the determination of whether an administrative agency acts solely as a neutral factfinding

---

[18] *Pestal v. Malone*, 275 Neb. 891, 750 N.W.2d 350 (2008).

[19] § 84-917(2)(a)(i).

[20] *McDougle v. State ex rel. Bruning, ante* p. 19, 853 N.W.2d 159 (2014).

body, or serves a broader role. An administrative agency is a neutral factfinding body when it is neither an adversary nor an advocate of a party.[21] In contrast, when an administrative agency acts as the primary civil enforcement agency, it is more than a neutral factfinding body.[22] Also, an administrative agency that is charged with the responsibility of protecting the public interest, as distinguished from determining the rights of two or more individuals in a dispute before such agency, is more than a neutral factfinding body.[23]

We have not previously addressed the nature of the Department's role in a contested case involving eligibility for Medicaid benefits. We have held that in other contexts, the Department or its predecessor served in a broader role and was therefore a "party of record" in judicial review proceedings under the APA. *McDougle* involved a proceeding to revoke the license of a mental health practitioner and alcohol and drug counselor. We held the Department's Division of Public Health acted as more than a neutral factfinder, because it was the primary civil enforcement agency for credentialing violations pertaining to the health care professions and possessed broad statutory powers to protect the public and regulate the professions. Similarly, in *Beatrice Manor v. Department of Health*,[24] we held that the Department of Health was a necessary party in proceedings to review its determination, through the Nebraska Health Care Certificate of Need Appeal Panel, to deny a health care facility permission to add more beds, given its responsibility for protecting the public interest as distinguished from determining the rights of two or more individuals in a dispute before the agency.

Applying these principles, we conclude that the Department was a party of record in this case. The Department has broad regulatory power, oversight of the Medicaid program, and

---

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] *Beatrice Manor v. Department of Health*, 219 Neb. 141, 362 N.W.2d 45 (1985).

a stake in the contract with Coventry. It is charged with administering the Nebraska Medicaid program.[25] The purpose of the program is to provide medical assistance to eligible residents.[26] Pursuant to this authority, the Department is authorized to "adopt and promulgate rules and regulations."[27] This is comparable to the Division of Public Health in *McDougle,* which also had broad powers to establish rules and regulations.[28]

Additionally, the Department is authorized to provide medical assistance for eligible recipients by utilizing managed care contracts.[29] The Department is responsible for processing and determining the eligibility of each applicant for medical assistance.[30] It is also responsible for establishing "premiums, copayments, and deductibles," as well as limits on those services.[31] Clearly, it is charged with protecting the public interest with respect to Medicaid, which it accomplishes in part by contracting with and paying MCO's such as Coventry. Because of the Department's broad authority and responsibility for administering the Medicaid program in Nebraska, its role at a State fair hearing is far more expansive than simply adjudicating disputes between parties regarding Medicaid eligibility. Thus, in this case, it was a "party of record" within the meaning of § 84-917(2)(a)(i).

### (b) Coventry

Whether Coventry was a necessary party to the district court appeal is likewise dependent upon whether it was a "party of record" at the State fair hearing.[32] Coventry contends that it was not a "party of record," but should have been. We

---

[25] Neb. Rev. Stat. § 68-908(1) (Cum. Supp. 2014).

[26] Neb. Rev. Stat. § 68-905 (Reissue 2009).

[27] § 68-908(2)(b).

[28] *McDougle, supra* note 20.

[29] Neb. Rev. Stat. § 68-910(2) (Reissue 2009).

[30] Neb. Rev. Stat. § 68-914(1) (Cum. Supp. 2014).

[31] Neb. Rev. Stat. § 68-912(1)(a) (Cum. Supp. 2014).

[32] See § 84-917(2)(a)(i).

conclude that the question of whether Coventry was a "party of record" at the State fair hearing and thus a necessary party in the district court appeal is a jurisdictional issue which does not involve a factual dispute; thus, we must resolve the question independently on the basis of the record and applicable law.[33]

The bill of exceptions from the State fair hearing proceedings does not specifically identify any "parties of record." While this creates some ambiguity on the point, the failure of the Department to make this important determination on the record in the administrative proceeding does not resolve the jurisdictional issue. As we noted in *McDougle*,[34] there is no statutory directive that the phrase "parties of record" for purposes of judicial review of an administrative determination is limited to those parties named in the underlying administrative proceeding.

This position is consistent with holdings by other state courts. In an Oklahoma case, the court found that even though two entities were not named and joined as parties in the caption of the administrative action, they both appeared, participated, and were entitled by law to participate; thus, they were parties of record and failure to join them on appeal was a jurisdictional defect.[35] Similarly, a Washington court defined a party of record as a person "'to whom the agency action is specifically directed,'" or a person "'named as a party to the agency proceeding or allowed to intervene or *participate as a party in the agency proceeding*.'"[36]

For two principal reasons, we conclude Coventry was a "party of record" at the State fair hearing. First, as an MCO, Coventry was required by federal law to be a party to the State fair hearing. Because Nebraska has elected to participate in the

---

[33] See *McDougle, supra* note 20.

[34] *Id*.

[35] *Oklahoma Foundation v. Dept. of Central*, 180 P.3d 1 (Okla. Civ. App. 2007).

[36] *Litowitz v. Growth Management Bd*., 93 Wash. App. 66, 69, 966 P.2d 422, 423 (1998) (emphasis supplied). See Wash. Rev. Code Ann. § 34.05.010(12)(a) and (b) (West Cum. Supp. 2015).

federal Medicaid program, it must comply with standards and requirements imposed by federal statutes and regulations.[37] A federal Medicaid regulation governing resolution of grievances and appeals specifically provides: "The parties to the State fair hearing include the MCO . . . as well as the enrollee and his or her representative . . . ."[38]

Second, it is clear from the administrative record that Coventry participated in the State fair hearing and was treated as a party by the hearing officer. Pursuant to § 84-909, the Department has adopted rules and regulations governing the appeals process in Medicaid cases.[39] Pursuant to these regulations, a Medicaid client may request a State fair hearing after denial or limitation of an authorization,[40] as Shaffer did in this case. The parties to the fair hearing include "the petitioner or person by whom a contested case is brought and the Department or other decision maker whose decision is subject to appeal or a person or party granted leave to intervene."[41] The "decision . . . subject to appeal" was Coventry's decision to deny Shaffer's request for coverage of PDN care to be provided by Delores. Coventry appeared at the fair hearing to explain and defend its decision. Its representatives presented evidence, cross-examined witnesses, entered into stipulations, and presented arguments. At the beginning and conclusion of the hearing, the hearing officer referred to Shaffer and Coventry as the "parties."

We conclude as a matter of law that Coventry was a "party of record" at the State fair hearing and therefore a necessary party pursuant to § 84-917(2)(a)(i) in the subsequent appeal to the district court. Coventry prevailed at the administrative proceeding, but was not given an opportunity to participate in or be heard in the district court appeal that resulted in a reversal

---

[37] See, *Thorson v. Nebraska Dept. of Health & Human Servs.*, 274 Neb. 322, 740 N.W.2d 27 (2007); Neb. Rev. Stat. § 68-906 (Cum. Supp. 2014).

[38] 42 C.F.R. § 438.408(f)(2).

[39] 465 Neb. Admin. Code, ch. 6 (1995); 482 Neb. Admin. Code, ch. 7 (2010).

[40] 482 Neb. Admin. Code § 7-003(2).

[41] 465 Neb. Admin. Code § 6-004.02.

of the administrative decision. Because the presence of a necessary party is jurisdictional, the failure to make Coventry a party to the appeal deprived the district court of jurisdiction. In light of this determination, we are required to vacate the judgment of the district court and therefore do not address Coventry's third assignment of error.

## V. CONCLUSION

For the foregoing reasons, we vacate the order of the district court and dismiss the appeal.

VACATED AND DISMISSED.

MILLER-LERMAN, J., not participating.